## IN THE COURT OF APPEALS OF IOWA

No. 23-0682
Filed July 26, 2023

**IN THE INTEREST OF S.G., C.G., G.G., and A.G.,**
**Minor Children,**

**D.S., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Mahaska County, Rose Anne Mefford, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Lynnette M. Lindgren of Broerman, Lindgren & Denny, Oskaloosa, for appellant mother.

Brenna Bird, Attorney General, and Natalie Hedberg, Assistant Attorney General, for appellee State.

Denise McKelvie Gonyea of McKelvie Law Office, Grinnell, attorney and guardian ad litem for minor children.

Considered by Ahlers, P.J., Badding, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**GAMBLE, Senior Judge.**

A mother appeals the termination of her parental rights to her four children.[1] She challenges the statutory grounds for termination, argues termination is not in the children's best interests, and contends the juvenile court should have declined to terminate based on permissive exceptions to termination.[2]  We affirm.

We review termination proceedings de novo.  *Z.P.*, 948 N.W.2d at 522.  "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination.  Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence."  *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (citation omitted).

---

[1] The court did not terminate the parental rights of the children's father, and the children are placed with the father.

[2] The mother also claims the State failed to make reasonable efforts toward reunification by refusing to allow her to engage in family therapy with her children, by failing to follow up on the children's individual therapy, and by failing to notify the mother the children were engaged in therapy prior to the termination hearing. The reasonable-efforts requirement is not a strict substantive requirement, but it is part of the State's ultimate proof that the children cannot be returned to the parent. *In re L.T.*, 924 N.W.2d 521, 527 (Iowa 2019).  So a reasonable-efforts challenge is generally a component of a statutory-grounds challenge.  However, we do not address the mother's reasonable-efforts challenges because she did not raise a reasonable-efforts challenge *prior* to the termination hearing.  *See In re E.H.*, No. 21-0467, 2021 WL 2709486, at *2 (Iowa Ct. App. June 30, 2021) (collecting cases requiring a parent to bring a reasonable-efforts challenge to the juvenile court prior to the termination hearing); *see also In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002).  Moreover, we note the onus is on parents to keep themselves informed of their child's medical and mental-health needs.  *Cf. In re Z.P.*, 948 N.W.2d 518, 524 (Iowa 2020) (citing a father's lack of knowledge of the child's medical and psychological needs as a factor favoring termination); *In re J.M.*, No. 22-0514, 2022 WL 2347857, at *4 (Iowa Ct. App. June 29, 2022) (citing a mother's failure to keep up the "rudimentary duties of a parent, like being involved in [the children's] schooling or therapy" as a factor in favor of termination).

We generally use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We consider: (1) whether grounds for termination have been established, (2) whether termination is in the children's best interests, and (3) whether we should exercise any of the permissive exceptions to termination. *Id.* at 472–73.

The juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(f) (2022). This ground for termination requires proof that (1) the child is four years of age or older; (2) the child has been adjudicated a child in need of assistance; (3) the child has been removed from the physical custody of the child's parents for the last twelve consecutive months and any trial period at home has been less than thirty days; and (4) the child cannot be returned to the custody of the child's parent at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting section 232.116(1)(f)(4)'s use of the phrase "at the present time" to mean at the time of the termination hearing). The mother only challenges the fourth element, whether the children could have been safely returned to her custody. *See In re T.W.*, No. 20-02145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020).

Following our review of the record, we agree with the juvenile court that the children could not be returned to the mother's custody. With the exception of a six-month period, this family has been involved with the Iowa Department of Health

and Human Services[3] in some capacity since spring 2017.[4] Since that time, the mother has addressed her substance-abuse issues, gained employment, and secured housing. However, barriers to reunification still remain.

The mother has a demonstrated history of failing to act in a protective capacity toward the children. Whenever the mother has been given more unsupervised time with the children, she has broken a safety plan. During a trial return period, the mother's boyfriend, who was not approved to be around the children, stayed in the mother's home with the children—sometimes physically disciplining them.[5] The oldest explained that "[i]t kind of felt like he was living there. He was always there. He always had his clothes there. . . . It just felt very unsafe." She told the mother that she was uncomfortable with the boyfriend there and disciplining the children but it "didn't really matter to [the mother]." When the children were removed from the mother's care as a result of the boyfriend's unapproved presence around the children, the mother blamed the children by yelling at them and calling them liars. Then, once visitation increased to eight-hour-long unsupervised visitation, the mother permitted the children to have contact with a cousin who previously molested the oldest child and showed the oldest child a nude photo.

The mother's inability to regulate her emotional responses has been an ongoing issue. The mother has been diagnosed with bipolar disorder, depression,

---

[3] The Iowa Department of Human Services and the Iowa Department of Public Health merged in 2022 to create the Iowa Department of Health and Human Services.

[4] The child-in-need-of-assistance proceedings giving rise to these termination-of-parental-rights cases began in January 2021.

[5] The boyfriend's parental rights to his own child were terminated.

post-traumatic stress disorder, and substance-abuse disorder (in remission). She has made progress on her sobriety but, despite therapy and medication, the mother remains emotionally unstable. Beyond emotional outbursts directed toward the children, the mother also acts out toward other adults who are involved in the children's lives. For example, at an April 2022 review hearing the mother exclaimed, "Fucking liar" during a social worker's testimony. Her outbursts continued through to the termination trial in April 2023—during a supervisor's testimony the mother interrupted to call the supervisor a "bitch." During the supervisor's later testimony, the mother exclaimed "I'm sick of it. These are fucking lies. This is bullshit," and then she exited the courtroom rather than staying to participate in the termination trial.[6] As the supervisor observed, the mother's behavior in court raises concerns for what her demeanor might be like behind closed doors with her children because these are the times one might expect the mother to be on her best behavior.

When reunification stalled for various reasons, the mother shifted blame onto the children rather than accept any responsibility. In response to her belief that the children were effectively sabotaging reunification, the mother instructed the children to be deceptive or withhold information from the department. In so doing, the mother acted with her own motives in mind rather than in consideration of the children's safety.

In short, the mother has demonstrated an inability to place the children's needs above her own, placing the children's safety at risk. And her conduct toward

---

[6] The mother eventually returned to the courtroom.

the children and others involved in the children's lives is often harmful to the children. While we commend the mother for the progress she has made with her substance abuse, the children cannot be safely returned to her custody due to remaining reunification barriers. A statutory ground for termination is satisfied, and we move on to the next step in our analysis.

Next, we consider whether termination is in the children's best interests. When making a best-interest determination, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). We agree with the juvenile court that termination is in all the children's best interests. The mother's emotions are often volatile, which negatively impacts the children, and she does not prioritize their safety. All four children have expressed a desire to live with the father. The oldest two children specifically want the mother's rights terminated.[7] The mother argues termination would eliminate potential financial benefits for the children such as child support, inheritance, or social security benefits. While those potential benefits would be eliminated by termination, termination would provide the children with permanency and stability that outweigh any potential financial benefit to maintaining the parent-child relationships.

Finally, we consider whether the mother established a permissive exception to preclude termination. *See A.S.*, 906 N.W.2d at 476 (explaining the burden of

---

[7] The oldest two children were thirteen and fifteen years old at the time of termination.

establishing a permissive exception to preclude termination is on the parent). She cites both section 232.116(3)(a), which permits the court to forgo termination when "a relative has legal custody of the child," and section 232.116(3)(c), which permits the court to forgo termination when "termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Even if established, we are not required to apply an exception to preclude termination. *Id.* at 475. Instead, we have discretion to determine whether or not to apply an exception. *See id.*

The father has legal custody of the children, so section 232.116(3)(a) could be applied to forgo termination. But doing so would conflict with the children's best interests, and we find it more prudent to decline to apply this exception to allow the children to achieve permanency. As to the mother's parent-child bonds with the children, we think she overstates them. The oldest two children actively desire termination of the mother's rights, and the youngest two want to live with their father. And none of the parent-child bonds shared between the mother and children are so strong that "severing [them] would be manifestly detrimental to the child[ren]." *See In re C.E.*, No. 22-1179, 2022 WL 4362094, at \*2 (Iowa Ct. App. Sept. 21, 2022). So we decline to apply any permissive exception to termination.

**AFFIRMED.**